```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

GREY OAKS COUNTRY CLUB,
INC.,

    Plaintiff,

v.                                Case No: 2:18-cv-639-FtM-99UAM

ZURICH AMERICAN INSURANCE
COMPANY,

    Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss Count II[1] of the First Amended Complaint (Doc. #24) filed on January 18, 2019.  Plaintiff filed a Response in Opposition (Doc. #28) on February 8, 2019, and defendant replied (Doc. #33). Also before the Court is plaintiff's Motion to Strike Affirmative Defenses (Doc. #32) filed on February 14, 2019.  Defendant filed a Response in Opposition (Doc. #34) and plaintiff replied (Doc. #37).  For the reasons set forth below, the Motion to Dismiss Count II is granted and the Motion to Strike is denied.

**I.**

This case involves an insurance coverage dispute for damages to plaintiff's country club property in Naples, Florida from Hurricane Irma.  Plaintiff Grey Oaks Country Club, Inc. (plaintiff

---

[1] Defendant filed an Answer to Count I.  (Doc. #23.)

or Grey Oaks) alleges that Zurich American Insurance Company (defendant or Zurich) breached its coverage obligations to Grey Oaks under a commercial insurance policy[2] (Count I) and acted in bad faith in contravention of Fla. Stat. § 624.155 (Count II).

The Amended Complaint sets forth the following facts: Beginning on or about September 10, 2017, Grey Oaks suffered extensive damages due to Hurricane Irma, including damage to real property and to golf course outdoor grounds, and from business interruption. A claim was submitted to Zurich for the damages and the parties disagreed about the extent of damage. Between October 2017 and February 2018, Zurich tendered four separate payments to Grey Oaks totaling $2,836,366.76[3] in connection with its claim.[4] (Doc. #20, ¶¶ 31, 71.)

Unbeknownst to Grey Oaks, over the next seven months, Zurich withheld additional proceeds that it knew were owed under the Policy but failed or reused to make any additional payments. (Doc. #20, ¶¶ 72-73.) When Zurich could not resolve the claim after seven months, it admitted by letter dated September 12, 2018 that

---

[2] Grey Oaks purchased commercial insurance policy No. CPO 2881188-11 (Doc. #20-1, the "Policy") from Zurich with a Policy Period from October 1, 2016 through October 1, 2017.

[3] Grey Oaks claims that its damages extend into the eight figures. (Doc. #20, ¶ 28.)

[4] Except for the final payment for water mitigation, Grey Oaks was not advised what these payments were made for, which coverages the payments were being made under, and what amounts (if any) Zurich was disputing. (Doc. #20, ¶ 32.)

coverage under four insuring agreements of the Policy[5] was due and tendered an additional payment of $1,134,649.73 (the "Coverage Position Letter", Doc. #32-1) (Id., ¶ 74-76.)  Plaintiff alleges that Zurich dragged its feet, withheld these proceeds that should have been paid under Florida law, and attempted to use that money to negotiate a lower settlement of Grey Oaks' claim.  Plaintiff alleges that these actions violated Florida's bad faith statute, Fla. Stat. § 624.155.

## II. Motion to Dismiss Count II

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. 1955.  See

---

[5] The insuring agreements that Zurich identified as implicated by Grey Oaks' claim were:
- Real and Personal Property Coverage
- Business Income Coverage
- Extra Expense Coverage
- Golf Course Outdoor Grounds Coverage

(Doc. #32-1.)

also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Zurich moves to dismiss Count II – the bad faith claim – as premature because under Florida law a first-party bad faith claim does not accrue until there is a determination of both liability and damages in the coverage case. Grey Oaks disputes that this

is a proper characterization of Florida law, and argues that Florida courts have recognized that an insurer's partial payment under a policy provides the liability and damages determination necessary to proceed with a statutory bad faith claim. (Doc. #28, p. 6.) If Grey Oaks cannot currently prosecute its bad faith claim, it requests that Count II be abated rather than dismissed.

"[A]n insured's underlying first-party action for insurance benefits against the insurer ... must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue." Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1233 (Fla. 2006). "[B]oth the existence of liability and the extent of damages are elements of a statutory cause of action for bad faith [under Fla. Stat. §§ 624.155 and 626.9541]..." Progressive Select Ins. Co. v. Shockley, 951 So. 2d 20, 20–21 (Fla. 4th DCA 2007); see also Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So. 2d 1289, 1291 (Fla. 1991) ("Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle."); Dadeland, 945 So. 2d at 1234 (same); Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1275–76 (Fla. 2000). The above authority has time and time again been recognized by Florida courts and is well established. See Bottini v. GEICO, 859 F.3d 987, 993 (11th Cir. 2017) (although in the context of uninsured

motorist coverage, the court cited <u>Blanchard</u> for the proposition that before a policyholder may file a bad-faith lawsuit, she must first establish contractual liability).

Here, there has been no determination as to the extent of damages suffered by Grey Oaks. Indeed, that is the heart of Grey Oaks' breach of contract claim, claiming Zurich is liable for additional insurance proceeds. Thus, the Court agrees with Zurich that a bad faith claim cannot be litigated simultaneously with a coverage dispute. <u>See</u> <u>Progressive Select Ins. Co. v. Shockley</u>, 951 So. 2d 20 (Fla. 4th DCA 2007) (finding that a plaintiff may not proceed simultaneously on a claim to determine liability or damage and a bad faith claim.)

That being the case, the final determination is whether Count II should be dismissed or abated pending resolution of the breach of contract claim. Either dismissal without prejudice or abatement are the preferred procedural remedies. <u>Hartford Ins. Co. v. Mainstream Constr. Group</u>, 864 So. 2d 1270, 1272 n.1 (Fla. 5th DCA 2004). The Court will exercise its discretion and dismiss Count II without prejudice.

### III. Motion to Strike Affirmative Defenses

The Federal Rules require defendants to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove


his case by a preponderance of the evidence." <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1303 (11th Cir. 1999). Pursuant to Rule 12(f), courts may strike "insufficient defense[s]" from a pleading upon a motion so requesting or <u>sua sponte</u>. Fed. R. Civ. P. 12(f).

Affirmative defenses are subject to the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(b)(1)(A) requires that a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). As with any pleading, an affirmative defense must give the plaintiff "fair notice" of the nature of the defense and the grounds upon which it rests, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and state a plausible defense, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

Of Zurich's twenty-one affirmative defenses (Doc. #23), Grey Oaks takes issue with fourteen. Specifically, Grey Oaks argues that affirmative defenses 2, 5-10, 12-15, and 17-19 are new coverage defenses that were not raised by Zurich in its pre-suit Coverage Position Letter, and therefore the "mend the hold doctrine" estops Zurich from relying on the newly identified Policy provisions. In addition, Grey Oaks argues that affirmative defenses 5-10, 12-15, and 17-19 are boilerplate and fall short of basic pleading requirements.

**A. Mend the Hold Doctrine**

"The underlying principle of the 'Mend the Hold' doctrine is that 'a party to a contract cannot change its defenses to performance of the contract in the middle of the litigation.'" The Square at Key Biscayne Condominium Assoc., Inc., v. Scottsdale Ins. Co., No. 13-24222, 2014 WL 11946882, *4 (S.D. Fla. Dec. 15, 2014) (citing Baquero v. Lancet Indem. Risk Retention Grp, Inc., 2013 WL 5237740, *6 (S.D. Fla. Sept. 17, 2013)). "The Mend the Hold" Doctrine is based on the principles of waiver and estoppel." Baquero, 2013 WL 5237740, *6.

Here, the parties debate whether the doctrines of waiver and estoppel are applicable to matters of coverage under Florida law. However, even if the mend the hold doctrine could apply to a coverage case such as this one, it would fail because Zurich specifically informed Grey Oaks in the Coverage Position Letter that it did not waive any position it might take. See Principal Life. Ins. Co. v. Alvarez, No. 11-21956, 2011 WL 4102327, *6 (S.D. Fla. Sept. 14, 2011) (concluding that "Mend the Hold" did not bar an insurer from asserting new defenses where the insurer stated in its denial letter that it was investigating to find other defenses). The Coverage Position Letter put Grey Oaks on notice that Zurich was reserving its right to rely on other Policy provisions in addition to those cited in the letter. (Doc. #32-1, p. 5.) Moreover, it is unknown at this point whether Zurich

had sufficient information at the time of the letter to have waived the additional defenses it now asserts. Thus, the Motion to Strike on this basis is denied.

### B. Sufficiency of the Pleading

Grey Oaks next takes issue with the sufficiency of affirmative defenses 5-10, 12-15, and 17-19, arguing that they are boilerplate and contain no factual support. Each of the affirmative defenses quote a Policy provision or exclusion and then states that "to the extent that Grey Oaks seeks coverage" under such provision no coverage is available. Grey Oaks argues that the defenses do not include any indication as to how the Policy provisions apply to the present facts and are at best hypothetical circumstances. For example, Zurich raises certain Policy exclusions for the first time, and Grey Oaks states that without more information it has no ability to determine what aspects of its claim may be subject to these newly-raised provisions.

The Court disagrees that Zurich must specifically identify the circumstances under which each of the Policy provisions apply at this early stage of the proceedings. The affirmative defenses are adequately pled to place Grey Oaks on notice at this point in the litigation of the Policy provisions upon which Zurich intends to rely if Grey Oaks seeks coverage for such damage. Thus, the Court will not strike affirmative defenses 5-10, 12-15, and 17-19 prior to the conclusion of discovery.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss Count II of the First Amended Complaint (Doc. #24) is **GRANTED**. Count II is dismissed without prejudice.

2. Plaintiff's Motion to Strike Affirmative Defenses (Doc. #32) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this __26th__ day of March, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record