UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREY OAKS COUNTRY CLUB,
INC.,

     Plaintiff,

v.                            Case No: 2:18-cv-639-FtM-99NPM

ZURICH AMERICAN INSURANCE
COMPANY,

     Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. #77), plaintiff's Response in Opposition (Doc. #90), and defendant's Reply (Doc. #94). For the reasons set forth below, the Motion is denied.

**I.**

This case involves an insurance coverage dispute for damages to plaintiff's country club property in Naples, Florida from Hurricane Irma. Plaintiff Grey Oaks Country Club, Inc. (plaintiff or Grey Oaks) alleges that Zurich American Insurance Company (defendant or Zurich) breached its coverage obligations to Grey Oaks under a commercial insurance policy, which is attached to the Amended Complaint (Count I), and acted in bad faith in contravention of Fla. Stat. § 624.155 (Count II). The Court dismissed Count II (Doc. #8); therefore, only the breach of

contract count for defendant's failure to compensate Grey Oaks in the full amount of its damages and loss resulting from Hurricane Irma remains.

Defendant now moves for summary judgment in its favor, raising one argument – that Grey Oaks cannot establish the damages element of their breach of contract claim because Zurich has already paid Grey Oaks all that it is due under the Policy, as admitted by Grey Oaks in interrogatory responses.  Grey Oaks states that those amounts were only a snapshot of Grey Oaks' damages and summary judgment is premature because discovery remains open until November 18, 2019.

The undisputed material facts are as follows: Zurich American issued commercial insurance policy no. CPO 2881188-11 (10/1/16-10/1/17) (the "Policy") to Grey Oaks.  The Policy provides first-party coverage for Grey Oaks' country club property.

After sustaining a loss on or about September 10, 2017 due to Hurricane Irma, Grey Oaks reported the loss to Zurich.  Zurich investigated and adjusted the claim and, prior to the filing of this lawsuit, issued insurance proceeds to Grey Oaks totaling $3,971,016.49.  (Doc. #77-2, ¶¶ 6-12 Affidavit of Patrick Sheridan.)  Grey Oaks seeks damages under four separate coverages in the Policy: (1) Golf Course Outdoor Grounds; (2) Real and

Personal Property; (3) Debris Removal; and (4) Expense to Reduce Loss. (Doc. #77-3, p. 6.)

In Response to Interrogatory No. 8[1] dated June 18, 2019 (Doc. #77-3), Grey Oaks identifies the various categories of damages it is seeking under each of these coverages. Grey Oaks' response to Interrogatory No. 8 reads as follows:

> Grey Oaks intends to prove the following damages under four coverages within the Policy: (1) Golf Course Outdoor Grounds Coverage, (2) the Real and Personal Property Coverage Form, (3) the Debris Removal Coverage, and (4) the Business Income Coverage/Expense to Reduce Loss. The breakdown by coverage is as follows, though certain damages may fall within more than one coverage:
>
> **GOLF COURSE OUTDOOR GROUNDS COVERAGE**[2]
>
> (1) Golf Course Work: $533,392.00
>
> (2) Damaged Tree Removal: $3,687,292.78
>
> (3) Irrigation and Path Repairs:2 $282,811.61
>
> (4) Debris Hauling:3 $404,295.94

---

[1] Interrogatory No. 8 reads: "Please describe with specificity the damages that Grey Oaks is seeking in this matter and provide a detailed breakdown of same, setting forth each and every component thereof, the alleged dollar value of each such component and explain how the dollar values were calculated." (Doc. #77-3, ¶ 8.)

[2] After the parties filed cross-motions for judgment on the pleadings, the Court found that there are two "premises" for purposes of the Golf Course Outdoor Grounds Coverage – 2400 Grey Oaks Dr N. and 1600 Estuary Dr. Therefore, the Court limited the premises to the two addresses listed above subject to the Policy's $500,000 per premises limit of liability in the Golf Course Outdoor Grounds Coverage insuring agreement. (Doc. #55.)

(5) Fuel:4 $19,069.21

(6) Stump Removal: $334,036.32

(7) General Labor:5 $316,336.34

(8) Replaced Trees through March 10, 2019: $896,554.18

(9) Damaged Trees not Replaced by March 10, 2019: $4,726,972.82

TOTAL: $11,200,761.20

**REAL AND PERSONAL PROPERTY**

(1) Main Clubhouse Interior Repairs: $318,609.92

(2) Main Clubhouse Roof Repairs: $1,200,000.00

(3) Main Clubhouse Sky Light Repairs: $36,500.00

(4) SERVPRO Clean Up at Main Clubhouse: $159,967.76

(5) Estuary Clubhouse Roof Repairs: $550,000.00

(6) Fence Removal and Replacement: $37,645.00

(7) Maintenance Facilities Repairs: $46,872.00

(8) Irrigation and Path Repairs: $282,811.61

TOTAL: $2,632,406.29

**DEBRIS REMOVAL**

(1) Debris Hauling: $404,295.94

(2) Fuel: $19,069.21

(3) General Labor: $316,336.34

TOTAL: $739,701.49

**BUSINESS INCOME COVERAGE/EXPENSE TO REDUCE LOSS**

(1) Amount to repair the Estuary golf course: $533,392.00

>       After Irma, Grey Oaks spent this amount in order to
>       immediately repair the Estuary golf course and reduce
>       the loss of business income from its closure.  To the
>       extent any of these amounts are uncovered under the Golf
>       Course Outdoor Grounds Coverage, they are covered here
>       and Zurich owes the balance of $134,976 under the
>       Business Income Coverage policy limit.

(Doc. #77-3, ¶ 8.)  Elsewhere in the interrogatory responses, Grey Oaks stated that "Grey Oaks' answer to Interrogatory 8 states the coverage forms at issue and provides the damages that the club intends to establish as covered under the Policy."  (Id., ¶¶ 9, 10.)  At footnote 1 to its interrogatory responses, Grey Oaks stated that "[i]t reserved the right to supplement these responses as necessary in the event additional information is discovered or becomes available to the club." (Id., n.1.)

For its part, Grey Oaks submitted its own discovery requests to Zurich, asking Zurich to identify each individual element of damage/loss that the insurer paid, the corresponding amount, and which insuring agreement each payment was made under.  (Doc. #90-3.)  Also, Grey Oaks has asked Zurich to identify the facts supporting each of its twenty-one affirmative defenses.  (Id.) Grey Oaks believes that Zurich's responses were inadequate but notes that it has until November 18, 2019 (the close of discovery) to file motions to compel.  Therefore, Grey Oaks argues that summary judgment is premature under Fed. R. civ. P. 56(d).

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding

summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## III.

The basis for Zurich's Motion for Summary Judgment is that because it has already paid Grey Oaks all that it is due under the Policy (save $5,321.80 plus prejudgment interest) summary judgment should be entered in its favor as Grey Oaks has no ability to recover any additional insurance proceeds under the four coverage parts at issue. As to each of these coverage parts, Zurich asserts that Grey Oaks has been paid the maximum amount that it is entitled to receive as illustrated here:

| COVERAGE PART | GREY OAKS' MAXIMUM ENTITLEMENT | PAYMENTS BY ZURICH AMERICAN | AMOUNT DUE GREY OAKS |
|---|---|---|---|
| "Golf Course Outdoor Grounds" Coverage | Two (2) $500,000 Limits of Liability Corresponding to the Two "Premises" Identified by the Court in its Premises Order | $1 million | $0 |
| "Real and Personal Property" Coverage | $2,632,406.29 | $2,759,992.49 | $0 |

| "Debris Removal" Coverage | Two (2) $500,000 Limits of Liability Corresponding to the Two "Premises" Identified by the Court in its Premises Order | $1 million | $0 |
|---|---|---|---|
| "Expense to Reduce Loss" Coverage | $134,976 | $129,654.20 (setoff for overpayment of $127,586.20 under the "Real and Personal Property" coverage and mistaken inclusion of $2,068 in the Supplemental Insurance Check | $5,321.80 plus prejudgment interest |

(Doc. #77, pp. 11-12.) However, Grey Oaks clearly disputes that this is the extent of damages that it is owed under the terms of the Policy. Therefore, the Motion for Summary Judgment can be denied on this basis alone. Although Grey Oaks set forth the amount of damages that it believes it is owed in Interrogatory 8 (served on June 18, 2019), discovery is ongoing and Grey Oaks reserved the right supplement its responses as further information became available prior to the close of discovery.

Further, the ongoing discovery in this case renders summary judgment improper under Federal Rule 56(d). Rule 56(d) expressly provides that the Court may deny a motion for summary judgment if a non-movant shows by affidavit that "it cannot present essential

facts to justify its opposition."³  Fed. R. Civ. P. 56(d).  The party opposing the motion for summary judgment bears the burden of alerting the Court to any outstanding discovery, but a written representation by the party's lawyer still falls within the spirit of the rule, and "[f]orm is not to be exalted over fair procedures."  Id. (citation omitted).

Rule 56 requires adequate time for discovery prior to entry of summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Entry of summary judgment before the nonmoving party has had time to conduct discovery constitutes reversible error.  See WSB-TV v. Lee, 842 F.2d 1266, 1269 (11th Cir. 1988).  A party has the right to challenge the factual evidence presented by the moving party by conducting sufficient discovery so as to determine if he may furnish opposing affidavits.  Snook, 859 F.2d at 870.  The Eleventh Circuit has cautioned that "summary judgment may only be decided upon an adequate record."  Id.  See also Jones v. City of Columbus, Ga., 120 F.3d 248, 253 (11th Cir. 1997) ("The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to the consideration of the motion.").

---

³ The Declaration of Attorney Walter J. Andrews (Doc. #90-4) was provided.

Relying on a Declaration filed in Support (Doc. #90-4), Grey Oaks asserts that further discovery is needed because the damage figures referenced in Interrogatory No. 8 are not static and are liable to change and Zurich has refused to adequately answer interrogatories from Grey Oaks that go directly to the damages at issue (for which Grey Oaks has time to file a motion to compel). Additionally, Zurich disclosed an expert, Jim Adams, on July 26, 2019, that will provide expert testimony about the "extent and valuation of physical damage to the insured buildings and structures at issue in this action," including "his opinions about the cause(s) and extent of the damage to the interior and exterior of the buildings and structures." (Doc. #90-5.) Mr. Adams will also offer opinions "concerning the reasonable costs to repair all damage to the buildings and structures at the insured premises that was cause by or resulted from Hurricane Irma, including his calculations of same." (Id.) Grey Oaks has not yet deposed any of Zurich's employees or experts regarding the insurer's damages calculation, nor has Grey Oaks received a written report from Mr. Adams. The Court finds that the entry of summary judgment on damages is premature when the parties have not yet completed discovery that could have a bearing on the issue.

In sum, summary judgment is denied because there are still material facts in dispute regarding damages and the Motion is premature.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion for Summary Judgment (Doc. #77) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __7th__ day of November, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record